# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA
# EASTERN DIVISION

| | |
|---|---|
| Ray Bruton, <br><br> Plaintiff, <br><br> vs. <br><br> City of Grand Forks, et al., <br><br> Defendants. | **ORDER** <br><br> Case No. 3:22-cv-135 |

Defendants City of Grand Forks (the "City"), Luke Wentz ("Officer Wentz"), Caleb Nelson ("Officer Nelson"), Michael Ruit ("Officer Ruit"), and Andrew Ebertowski ("Officer Ebertowski") move for partial dismissal of Plaintiff Ray Bruton's complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Doc. No. 25. Bruton opposes the motion. Doc. No. 29. For the reasons below, the motion is granted in part and denied in part.

## I.   FACTUAL BACKGROUND

The facts are taken from the complaint and are accepted as true for the purposes of deciding this motion. Doc. No. 1. Bruton is a resident of Grand Forks, North Dakota. Id. Officers Wentz, Nelson, Ruit, and Ebertowski are police officers for the City. Id. As alleged, on April 15, 2021, Bruton was driving to his home in Grand Forks. Id. Bruton was pulled over by Officers Nelson and Wentz, and they asked Bruton to step out of his vehicle. Id. ¶¶ 12-21. Officers Ruit and Ebertowski then pulled up behind Bruton's vehicle. Id. Shortly after Bruton was pulled over, two more Grand Forks Police Department ("GFPD") cruisers also arrived on the scene. Id.

Officers Wentz and Nelson approached Bruton's vehicle first. Id. ¶ 23. Officer Wentz allegedly told Bruton that he had been pulled over for an improper turn. Id. ¶¶ 24-25. Bruton was

then asked to exit the vehicle, and he complied. Id. ¶ 27. After getting out of his vehicle, Bruton gave Officer Wentz his cell phone, which displayed his insurance card. Id. ¶¶ 28-29. Officers Wentz and Ebertowski then told Bruton to walk back to the police vehicle and get in the back seat. Id. ¶ 34.

Bruton alleges Officers Wentz and Ebertowski intentionally ushered him to the police cruiser quickly, and he did not have time to close the driver's side door of his vehicle. Id. ¶ 40. And as soon as Bruton reached the police cruiser, Officer Ruit looked inside the vehicle through that open door. Id. ¶ 42. Officer Ruit then walked a drug-sniffing dog around Bruton's vehicle. When he reached the open driver's side door, Bruton alleges Officer Ruit encouraged the dog to jump into his vehicle, which it did. Id. ¶¶ 43-44. As alleged, the dog stayed inside the vehicle for several seconds, then exited the vehicle, and Officer Ruit went on to guide the dog around the car for several more minutes. Id. ¶¶ 45-47.

When Bruton got to the police cruiser, he alleges he asked Officer Ebertowski why the officers were reacting so forcefully to an alleged improper turn. Id. ¶ 50. In response, Officer Ebertowski supposedly discussed the GFPD's policies and procedures concerning the use of drug-sniffing dogs at routine traffic stops. Id. ¶ 51. Bruton alleges that Officer Ebertowski said they removed Bruton from the vehicle for the express purpose of deploying the drug sniffing dog. Id. ¶ 52. He is then alleged to have said that deploying the dog was "not a search, it's just a sniff." Id. ¶ 53. Bruton alleges that Officer Ebertowski stated:

1. We're allowed to sniff any vehicle.

2. We have that right. That's what the U.S. Supreme Court has said.

3. I don't need probable cause . . . We don't even need reasonable suspicion in the State of North Dakota. We don't need anything.

> 4.  We don't need a reason to deploy the dogs.  In North Dakota you don't need any reason to deploy the dogs.

Id. ¶ 54.  He also alleges that Officer Ebertowski told him that he was right behind Bruton at the time Bruton allegedly made the improper turn and that there was no improper turn.  Id. ¶ 56.

Bruton was then put in the backseat of the police cruiser.  Id. ¶ 57.  The door was locked from the outside.  Id. ¶ 58.  Bruton was in the backseat for several minutes before Officer Ebertowski opened the door to let him go.  Id. ¶ 65.  Officer Wentz then issued Bruton a citation for making an improper turn under Grand Forks Code of Ordinances § 8-0503.  Id. ¶ 66.  Bruton challenged the citation, but the civil violation for an improper turn was upheld in municipal court.  See City of Grand Forks v. Ray Bruton, Grand Forks Municipal Case GF-2021-TR-00879.

Bruton's complaint alleges three 42 U.S.C. § 1983 claims against the individual Officers— (1) unlawful seizure, (2) unlawful search, and (3) unlawful arrest, all in violation of the Fourth Amendment of the United States Constitution.  Doc. No. 1.  The complaint also alleges an unconstitutional custom, pattern, policy, practice, and/or procedures claim against the City.  Id.

## II.   LAW AND ANALYSIS

This is a partial motion to dismiss.[1]  The Defendants seek dismissal of the unlawful seizure claim in its entirety, to the extent it claims the Officers were not justified in initiating the traffic stop.  They also move for dismissal as to Officers Nelson and Ruit to the extent the claim alleges the traffic stop was unconstitutionally prolonged.  As to the unlawful search claim, the Defendants move for dismissal as to Officers Wentz, Nelson, and Ebertowski.  And as to the unlawful arrest,

---

[1] The Defendants do not move to dismiss the unconstitutional custom, pattern, policy, practice, and/or procedures against the City, and they do not move to dismiss the unlawful search claim against Officer Ruit.

the Defendants argue the claim should be dismissed as to all Officers, or alternatively, dismissal of this claim against Officers Nelson and Ruit.

### A.    Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 8(a) requires a pleading only to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." But a complaint may be dismissed for "failure to state a claim upon which relief can be granted," and a party may raise that defense by motion. Fed. R. Civ. P. 12(b)(6). In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court accepts as true the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. Gorog v. Best Buy Co., 760 F.3d 787, 792 (8th Cir. 2014) (citation omitted). Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). The complaint must "state a claim to relief that is plausible on its face." Id. at 570.

### B.    42 U.S.C. § 1983 Claims

Under 42 U.S.C. § 1983, "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State" shall be held liable for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws [.]" To bring a claim under § 1983, a plaintiff must allege (1) that the defendant acted under color of state law, and (2) that the defendant's alleged conduct deprived the plaintiff of a constitutionally protected federal right. See Schmidt v. City of Bella Villa, 557 F.3d 564, 571 (8th Cir. 2009). Here there is no dispute that the Officers acted under color of state law. But there is a dispute as to whether Bruton plausibly alleged that the individual Officers violated his constitutional rights. See Albright v. Oliver, 510

U.S. 266, 271 (1994) (stating the threshold question of any § 1983 claim is whether a deprivation of a constitutional right has been established.).

With individual capacity claims, "[t]o prevail on a § 1983 claim, a plaintiff must show each individual defendant's personal involvement in the alleged violation." White v. Jackson, 865 F.3d 1064, 1081 (8th Cir. 2017). By extension then, "[a]n officer may be held liable only for his or her own [actions]." Torres v. City of St. Louis, 39 F.4th 494, 504 (8th Cir. 2022). But participation in an unconstitutional activity with other officers is generally sufficient to implicate individual liability. See Clinton v. Garrett, 551 F. Supp. 3d 929, 950 (S.D. Iowa 2021).

### 1. Unlawful Seizure

Turning to his first claim, Bruton's alleges he was unlawfully seized in violation of his Fourth Amendment rights in two ways—first, when the Officers initially stopped his vehicle without reasonable suspicion or probable cause that he had committed any crime, and second, when the Officers unlawfully prolonged the traffic stop. Doc. No. 1 ¶¶ 74-75.

The Fourth Amendment prohibits unreasonable searches and seizures (U.S. Const. amend. IV) and applies to state actors because it is incorporated into the Due Process Clause of the Fourteenth Amendment. See Mapp v. Ohio, 367 U.S. 643, 655 (1961). A person is seized under the Fourth Amendment when an officer, "by means of physical force or show of authority," terminates or restrains the person's freedom of movement. Brendlin v. California, 551 U.S. 249, 254 (2007). A traffic stop is a seizure of the driver even though the stop is limited, and the detention of the driver is brief. Id. at 255. Because it is subject to Fourth Amendment protections, a traffic stop must be supported by either reasonable suspicion or probable cause. United States v. Chartier, 772 F.3d 539, 543 (8th Cir. 2014). Fourth Amendment protections do not end there though—a constitutionally permissible traffic stop can become unlawful if its length exceeds the

time needed to attend to the stop's "mission" and "related safety concerns." Rodriguez v. United States, 575 U.S. 348, 354 (2015) (internal citations omitted). Without reasonable suspicion, an officer may not conduct unrelated checks that extend the stop beyond the time reasonably required to complete its original purpose of the stop. Id. at 355.

### a. Initial Traffic Stop

Starting with the initial traffic stop, recall that Bruton was initially stopped for an improper turn. He alleges the Officers did not have reasonable suspicion to initiate that traffic stop. But, as the Defendants point out in their motion, Bruton's improper turn was upheld as a civil violation in municipal court. And because that violation was upheld, Bruton cannot state a plausible unlawful seizure claim on the theory that the initial stop lacked reasonable suspicion and probable cause.

This argument is based on the United States Supreme Court decision Heck v. Humphrey. 512 U.S. 477 (1994). In Heck, the Supreme Court held:

> [I]n order to recover damages for . . . harm caused by actions whose unlawfulness would render a conviction or sentence invalid . . ., [a civil rights] plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]

Id. at 486-87. So, even when a plaintiff demands only money damages, the plaintiff cannot bring a civil rights action that would call into question the lawfulness of the underlying conviction. Id. at 483; see also Sheldon v. Hundley, 83 F.3d 231, 233 (8th Cir. 1996) ("Heck requires favorable termination of the [criminal] action in an authorized state tribunal or a federal habeas corpus court, even if the [civil] claim is for damages[.]").

The question now becomes what is a "conviction" under Heck? And are traffic violations of municipal ordinances that are expressly civil in nature treated the same way under Heck? Here, the parties agree that Bruton's violation for an improper turn was a civil violation, not a criminal

6

conviction, per the Grand Forks Municipal Code and North Dakota law.[2]  Bruton argues this makes Heck inapplicable; the Defendants argues Heck still applies.  This question is a close call, but many federal courts have held that Heck applies equally to violations of local ordinances, even when they are considered civil rather than criminal proceedings.  See Baca v. City of Parkville, No. 5:19-CV-06057-RK, 2022 WL 1477445, at *7 (W.D. Mo. May 10, 2022) (collecting cases).  The Eighth Circuit also appears to have endorsed this approach.  See Brooks v. Iowa Att'y Gen., 242 F.3d 374 (8th Cir. 2000) (traffic violations must be set aside prior to bringing a § 1983 action).  Given this authority, while Bruton's improper turn was a civil violation of a local ordinance, Heck does appear to apply and bar Bruton from challenging the validity of the improper turn, absent some showing that the violation was reversed or expunged (which is not alleged in his complaint).  Because the improper turn has not been reversed or expunged, Bruton cannot plausibly state an unlawful seizure claim based on the theory that the Officers lacked reasonable suspicion or probable cause to initiate the traffic stop.  In that limited sense, and as to only that theory of liability, the Defendants' motion to dismiss is granted.

### b. Prolonging The Stop

That is not the end of the inquiry, though, on the unlawful seizure claim.  Bruton also alleges the Officers prolonged the traffic stop in violation of his Fourth Amendment rights.  On this theory, the Defendants assert Officers Ruit and Nelson are not alleged to have participated in prolonging the stop, so the claim must be dismissed as to them.

---

[2] Bruton was found guilty of violating Grand Forks Code of Ordinances § 8-0503.  This ordinance falls under Chapter 8 of the Grand Forks Code of Ordinances.  The Code explicitly states that all offenses set forth in "Articles 3 through 14" of Chapter 8 are "noncriminal."  Grand Forks Code of Ordinances § 8-1502.  And under North Dakota law, traffic violations under municipal ordinances are noncriminal offenses.  N.D. Cent. Code § 39-06.1-02.

7

A constitutionally permissible traffic stop becomes unlawful when its length exceeds the time reasonably needed to perform it. Rodriguez, 575 U.S. at 354. So, to establish a plausible claim, Bruton must plead facts (or sufficient facts to draw reasonable inferences) that each individual Officer is liable for the misconduct alleged. Brookins Hybrid Drive Sys., LLC, 2013 WL 12086636, at *2. The Defendants assert Officers Ruit and Nelson are only alleged to have been in the vicinity of the alleged misconduct. But "[officers] who do not physically administer the alleged constitutional violation, but who are present and participating in the alleged constitutional violation, can still be liable for the violation inflicted by other officers in certain situations." Dowty v. Bennett, No. CIV 12-4002-RAL, 2013 WL 365249, at *4-5 (D.S.D. Jan. 30, 2013) (collecting cases). And participating in a traffic stop where unconstitutional violations occur is sufficient to expose an officer to individual liability. See e.g., Clinton v. Garrett, 551 F. Supp. 3d 929, 950 (S.D. Iowa 2021), aff'd, 49 F.4th 1132 (8th Cir. 2022).

Here the complaint alleges:

The individual Defendants' acts and omissions were pursuant to the actual customs, policies, practices, and procedures of the Grand Forks Police Department. Defendants were agents, servants, employees, partners, joint venturers, co-conspirators, and/or alter egos of the Grand Forks Police Department, and through the acts alleged herein were acting within the course and scope of those relationships. <u>Defendants gave consent, aid, and assistance to the other Defendants and ratified and/or authorized the acts or omissions of other Defendants as alleged herein, except as may be otherwise specifically alleged. At all material times, each Defendant was jointly engaged in unlawful activity, resulting in the deprivation of Plaintiff's constitutional rights and other harm.</u>

\* \* \*

The individual Defendants unreasonably extended their seizure of Bruton long after the tasks tied to the alleged traffic violation for which he was stopped were completed, or at least should have been completed. They did so for the sole purpose of deploying a drug-sniffing dog inside and around of Bruton's vehicle. They did not have any reasonable suspicion that justified extending the traffic stop.

8

Doc. No. 1 ¶¶ 11, 75 (emphasis added). These facts support a reasonable inference that the Officers worked together to prolong the stop to unlawfully search Bruton's vehicle.

More specifically, as to Officer Ruit, he is alleged to have led the dog around the vehicle several times and to have encouraged the dog to search inside the vehicle. This supports a reasonable inference that the alleged unlawful seizure was prolonged to accommodate the search of the vehicle, as opposed to the amount of time it would reasonably take to complete a traffic stop for an improper turn. As to Officer Nelson, he is alleged to have taken Bruton to the back of a police cruiser to facilitate the search of the vehicle and is alleged to have prevented Bruton from closing the door to his vehicle. As alleged, this is participation in the unlawful seizure, and Officer Nelson was not merely a bystander to the actions of other officers. Taking these allegations, and the complaint as a whole, Bruton has alleged a plausible unlawful seizure claim as to all four Officers on the grounds that the traffic stop was unlawfully prolonged, and the motion to dismiss is denied as to that specific claim.

### C.  Unlawful Search

For his second claim, Bruton alleges the Officers violated his Fourth Amendment rights by engaging in an unreasonable search. Doc. No. 1 ¶¶ 79-88. The Defendants concede a plausible claim has been alleged against Officer Ruit for an unlawful search but argue there are insufficient factual allegations to Officers Wentz, Nelson, and Ebertowski to sustain this claim.

The Fourth Amendment prohibits unreasonable searches. U.S. Const. amend. IV. Absent further intrusion, the use of a well-trained narcotics dog around the exterior of a vehicle that has been lawfully stopped does not infringe upon any Fourth Amendment rights. United States v. Williams, 429 F.3d 767, 772 (8th Cir. 2005); Illinois v. Caballes, 543 U.S. 405, 409 (2005); United States v. Place, 462 U.S. 696, 707 (1983). But an intrusion into the interior of a vehicle is different.

Police cannot search the interior of an automobile as a matter of course unless they have probable cause to believe that the vehicle contains contraband or other evidence of a crime. California v. Carney, 471 U.S. 386, 392 (1985); United States v. Ross, 456 U.S. 798, 823 (1982). A drug sniffing dog is an instrumentality of the police, and the actions of "an instrument or agent" of the government are subject to the limitations proscribed by the Fourth Amendment. Skinner v. Ry. Labor Execs. Ass'n, 489 U.S. 602 (1989). While the Eighth Circuit has not directly addressed whether a drug sniffing dog's intrusion into a vehicle constitutes a search for Fourth Amendment purposes, other circuits have found that it does.[3] See United States v. Winningham, 140 F.3d 1328, 1331 (10th Cir. 1998).

The crux of the Defendants' argument here is that, while Officer Ruiz is alleged to have conducted an unlawful search of Bruton's vehicle, the other Officers did not. The complaint alleges:

> The individual Defendants deployed a drug-sniffing dog near Bruton's vehicle with the driver's side door open and Defendant Ruit then assisted the dog in entering the vehicle. Ruit allowed the dog to stay inside the vehicle for several seconds and the dog only exited when it completed its search of the interior of Bruton's vehicle. Ruit also searched the interior of the vehicle on his own.
>
> When the individual Defendants deployed the drug-sniffing dog inside of Bruton's vehicle, they had no probable cause to support searching the interior of the vehicle.

Doc. No. 1 ¶¶ 84-85. With these allegations, there are sufficient facts to reasonably infer that the Officers worked together to complete the unlawful search. While Officer Ruit is the individual officer who physically performed the search, participation in the incident is sufficient to give rise to individual liability. White v. Jackson, 865 F.3d 1064, 1080-81 (8th Cir. 2017) (minor

---

[3] Bruton argues United States v. Pulido-Ayala, 892 F.3d 315, 319 (8th Cir. 2018), supports this position, but it does not. In that case, the Eighth Circuit did not reach the intrusion issue because probable cause existed to search the interior of the vehicle.

participation in unconstitutional police conduct was sufficient to trigger personal liability); Johnson v. Davis, No. 97–2339, 175 F.3d 1024, at *1-2 (8th Cir. 1999) (affirming denial of summary judgment to officers because they were present and possibly participating in constitutional violations); Clinton, 551 F. Supp. 3d at 950.  There are sufficient factual allegations to plausibly allege an unlawful search claim against all four Officers.  As such, the motion to dismiss that claim as to Officers Wentz, Nelson, and Ebertowski is denied.

### D.     Unlawful Arrest

For his last claim as to the Officers, Bruton alleges the Officers engaged in an unlawful arrest in violation of his Fourth Amendment rights.  Doc. No. 1 ¶ 92.  The Defendants argue this claim should be dismissed because it is duplicative of Bruton's unlawful seizure claim, there was probable cause for the traffic stop,[4] the facts alleged do not rise to the level of an arrest as a matter of law,[5] and alternatively, Officers Nelson and Ruit are entitled to dismissal because Bruton did not plead sufficient facts as to their individual participation in the arrest.

Turning to the duplicity argument, although there is "no precise rule," federal courts should avoid duplicative litigation.  Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976). While the general principle is to avoid duplicative litigation, the determining factors should be equitable in nature, giving regard to wise judicial administration.  Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co., 342 U.S. 180, 183 (1952).  In the Eighth Circuit, dismissal of duplicative claims is preferred.  Blakley v. Schlumberger Tech. Corp., 648 F.3d 921, 932 (8th Cir. 2011); Brewer v. Swinson, 837 F.2d 802, 804 (8th Cir. 1988).  Claims are not duplicative of each other

---

[4] As determined in this order, given Heck, Bruton cannot plausibly allege that the traffic stop itself was an unlawful seizure.  But that is not dispositive of the unlawful arrest claim.

[5] This is a new argument raised for the first time in the reply, so it need not be addressed here. See Mahaney v. Warren Cnty., 206 F.3d 770, 771 n.2 (8th Cir. 2000)

when they assert two different theories of liability. Jones v. Aetna Life Ins. Co., 856 F.3d 541, 547 (8th Cir. 2017).

Some federal courts have held that two similar Fourth Amendment claims are duplicative, while others have not. Compare Regalado v. Riverside Cnty., 2021 WL 945249, at *5 (C.D. Cal. 2021) with Brigman v. Schaum, 2021 WL 3821070, at *6 (M.D. Pa. 2021). The Eighth Circuit has not addressed this precise issue. Resolving the duplicity question seems to turn on the specific facts of each claim. Here the operative question is whether Bruton's unlawful seizure claim asserts the same theory of liability as the unlawful arrest claim. See Jones, 856 F.3d at 547.

As the basis for his unlawful seizure claim, recall that Bruton alleges the traffic stop was unlawfully prolonged. His unlawful arrest claim asserts that even if the seizure was lawful, it became an unlawful arrest when the seizure was prolonged and was accompanied by a show of force. Also, to make a warrantless arrest, the officers must have had probable cause that a crime had been committed. See Ross v. City of Jackson, 897 F.3d 916, 920 (8th Cir. 2018).

While perhaps a fine distinction, these claims are not duplicative. Each claim is evaluated under slightly different standards. For the unlawful seizure claim, the analysis focuses on whether the Officers lacked reasonable suspicion to prolong the stop; for the unlawful arrest claim, the analysis focuses on whether the Officers lacked probable cause to make the arrest. It is possible that a factfinder could find the Officers had reasonable suspicion to seize Bruton during the traffic stop but lacked the required probable cause to arrest him. That suggests the claims, while related, are not duplicative.

Finally, the Defendants reiterate their position that only those Officers who physically arrested Bruton can be liable for the unlawful arrest. Again, this position is too narrow and does not square with the applicable legal standards. Each of the Officers are alleged to have participated

in the purported unlawful arrest by either seizing Bruton for longer than necessary, showing force, ushering him to the back of the police cruiser, or by prolonging the seizure into an unlawful arrest by unlawfully searching the vehicle. These allegations are sufficient to plausibly assert the unlawful arrest claim as to the individual Officers, and the motion to dismiss is denied on that claim.

### III. CONCLUSION

For the reasons above, the Defendants' motion to dismiss (Doc. No. 25) is **GRANTED IN PART** and **DENIED IN PART**. The motion to dismiss is granted with prejudice as to Bruton's first claim for unlawful seizure on the grounds that the Officers lacked reasonable suspicion to initiate a traffic stop for an improper turn. As to the remaining claims, the motion is denied.

**IT IS SO ORDERED**.

Dated this 5th day of May, 2023.

*/s/ Peter D. Welte*
Peter D. Welte, Chief Judge
United States District Court